Thomas F. FRIST and Dorothy Frist, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 3-90-0296.

United States District Court, M.D. Tennessee, Nashville Division.

Aug. 9, 1991.

James C. Gooch, Michael D. Sontag, Bass, Berry & Sims, Nashville, Tenn., for plaintiffs.

Carl Q. Carter, Michael J. Martineau, Carol Priest, Josh Eagle, Washington, D.C., Joe Brown, Nashville, Tenn., for defendant.

## MEMORANDUM

WISEMAN, District Judge.

This is a case of first impression involving interpretation of certain alternative minimum tax provisions in effect in 1985. The Frists brought this refund action pursuant to 26 U.S.C. § 7422. The tax year at issue is 1985, antedating the Tax Reform Act of 1986. The United States filed a motion for summary judgment on November 1, 1990, and the Frists filed a cross-motion for partial summary judgment on November 20, 1990. The Court held a hearing on the cross-motions on August 5, 1991, and took the case under advisement. For the reasons stated below, the Court GRANTS the United States' motion for summary judgment.

### I.

The Frists had a net loss for regular tax purposes in 1985 and were required to compute alternative minimum tax liability under § 55 of the Internal Revenue Code of 1954. The Frists had $127,857 of interest expenses during 1985, and deducted this entire amount in computing their § 55 liability. The Internal Revenue Service ("IRS") disallowed most of this deduction, taking the position that only $16,656 of the Frists' interest expenses was deductible for regular tax purposes and that, therefore, only this amount was deductible in computing their alternative minimum tax liability. The IRS notified the Frists in October of 1986 that they owed additional tax, penalties, and interest for the 1985 tax year. This amount was paid by offset of a claimed tentative carryback for the 1981 tax year.

### II.

The "beef" in this case boils down to whether interest expense deductions under the alternative minimum tax provisions of the Code are subject to the same limitations as under the regular tax provisions. The deduction of interest expense for regular tax purposes is governed by 26 U.S.C. § 163, which in 1985 provided, in pertinent part, the following:

(a) General Rule.—There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness.

\* \* \* \* \* \*

(d) Limitation on Interest on Investment Indebtedness.—

(1) In general.—In the case of a taxpayer other than a corporation, the amount of investment interest ... *otherwise allowable as a deduction under this chapter* shall be limited, in the following order, to—

(A) $10,000 ($5,000, in the case of a separate return by a married individual), plus

(B) the amount of the net investment income ... plus the amount (if any) by which the deductions allowable under this section ... and sections 162, 164(a)(1) or (2), or 212 attributable to property of the taxpayer subject to a net lease exceeds the rental income produced by such property for the taxable year. . . .

(2) Carryover of disallowed investment interest.—The amount of disallowed investment interest for any taxable year shall be treated as investment interest paid or accrued in the succeeding taxable year.

(3) Definitions.— ...

(A) Net investment income.—The term "net investment income" means the excess of investment income over investment expenses. . . .

Emphasis added. Application of the above provisions resulted in the Frists deducting $16,656 in interest expenses in 1985 for regular tax purposes.

Section 55(e) of the 1954 Code governs alternative minimum tax itemized deductions, including deductions for interest. The relevant portions of § 55 follow:

(1) In General.—The term "alternative tax itemized deductions" means an amount equal to the sum of *any amount allowable as a deduction* for the taxable year ... under—

* * * * * *

(D) *this chapter* for qualified interest ...

* * * * * *

(3) Qualified Interest.—The term "qualified interest" means the sum of—

(A) any qualified housing interest, and

(B) *any amount allowed as a deduction for interest ... to the extent such amount does not exceed the qualified net investment income* of the taxpayer for the taxable year.

* * * * * *

(5) Qualified Net Investment Income.— For purposes of this subsection—

(A) In General.—The term "qualified net investment income" means the excess of—

(i) qualified investment income, over

(ii) qualified investment expenses.

(B) Qualified Investment Income.— The term "qualified investment income" means the sum of—

(i) investment income ...

(ii) any net *capital gain* attributable to the disposition of property held for investment, and

(iii) the amount of items of tax preference described in paragraph (1) of section 57(a).

* * * * * *

Emphasis added. The question is whether, for purposes of alternative minimum tax liability, "qualified net investment income" (which includes long-term capital gain) is the cap on alternative minimum tax deductions or whether "net investment income" under § 163 (which does not include long-term capital gains) caps the amount of interest expense the Frists can deduct.

The Frists assert they were entitled to deduct interest expenses in the amount of $127,857 (the full amount incurred by them) in computing their alternative minimum taxable income for the calendar year 1985. They construe § 55(e)(3)(B) to mean that a taxpayer is permitted to deduct investment interest for alternative minimum tax purposes to the extent that such interest does not exceed "qualified net investment income." Because "qualified net investment income" specifically includes long-term capital gains, the Frists' qualified net investment income for 1985 ($464,-169) was substantially higher than their "net investment income," which they used to compute their investment interest deduction for regular income tax purposes. Citing that the total amount of their interest expenses was lower than their qualified net investment income, the Frists claim they should be allowed to deduct the full $127,-857 for alternative minimum tax purposes.

■ To bolster this argument they point to another limitation on the deductibility of interest for alternative minimum tax purposes. Section 55(e)(2) provides that, if a disallowed investment interest deduction may be *carried over* and used in computing the taxpayer's *regular* taxable income in later years, it may not be used in computing the taxpayer's alternative minimum taxable income for the year in which the expense was incurred. Generally, investment interest expense disallowed under § 163(d) is subject to an unlimited carryover for regular income tax purposes. However, if the *interest expense* disallowed by § 163(d) *exceeds* the taxpayer's *regular taxable income* for the year, there is *no carryover* for regular income tax purposes. *See* H.B.Rep. No. 413 (Part 1), 91st Cong., 1st Sess. 74 (1969); Rev.Rul. 86–70 (holding that no carryover of investment expenses was available to the extent that the disallowed interest expense exceeded the taxpayer's regular income for the year).

In 1985 the Frists had a *loss* for regular tax purposes. Thus, they argue, because they *could not carryover* the disallowed interest expense, § 55(e)(2) should not be

read to limit the deduction to the amount deductible for regular tax purposes ($16,-656). Rather, according to the Frists, § 55(e)(2) should be read to permit them to take as an alternative minimum tax deduction all the interest expense which they could not carryover ($127,857). This is essentially a "fairness" argument.

Finally, the Frists argue that the word "allowed" in § 55(e)(3)(B) incorporates only alternative minimum tax limitations, and does not incorporate by reference the limitations contained in § 163(d). At the August 5 hearing, plaintiffs' counsel emphasized that the alternative tax itemized deduction for qualified interest (§ 55(e)(1)(D)) is the only listed deduction in § 55(e)(1) which is not expressly limited by another provision in the Code. Thus, argue plaintiffs, because Congress could have indicated specifically that the deduction in § 55(e)(1)(D) was limited by § 163(d) but failed to do so, Congress did not intend for the regular tax limitations on interest deductions to apply in computing alternative minimum tax liability.

■ Despite the arguments raised by the Frists, the Court agrees with the Government that plaintiffs only were entitled to deduct interest "allowed" under § 163(d) in computing their alternative minimum tax liability for 1985.

To support its interpretation of § 55, the Government relies on the legislative history of §§ 55(e)(1) and (e)(3) of the 1954 Code. The report of the Senate Finance Committee states that, in enacting changes to § 55, Congress had "one overriding objective": that "no taxpayer with substantial economic income should be able to avoid all tax liability by using exclusions, deductions and credits." S.Rep. No. 97–494, Vol. 1, 97th Cong., 2d Sess. at 108 ([1982] 2 U.S.Code Cong. & Admin.News 781). The report of the Finance Committee also addressed the issue of what constitutes a "minimum tax itemized deduction." The Committee stated that "[i]n computing the minimum tax base, certain itemized deductions *allowable under the regular tax* will be allowed." S.Rep. No. 97–494, supra at 110 (emphasis added).

Congressional intent in enacting the alternative minimum tax provisions supports the Government's position. The minimum tax was enacted in 1969 in order to make sure that at least some minimum tax was paid on tax preference items, especially in the case of some high-income persons. As the Government has pointed out, the overall approach of Congress in attacking this problem was to try to *restrict* the amount of "exclusions, deductions and credits" available to those high-bracket individuals. S.Rep. No. 97–494, *supra* at 108:

> Therefore, the committee has provided an alternative minimum tax which is intended to insure that, when an individual's ability to pay taxes is measured by a broad-based concept of income, a measure which can be reduced by *only a few of the incentive provisions*, tax liability is at least a minimum percentage of that broad measure.

*Id.* (emphasis added).

Putting aside the Government's citations to legislative history, this Court is convinced that the plain language of § 163(d)(1) and § 55(e) dictates the limitation urged by the Government. Section 163(d)(1) limits the amount of investment interest "otherwise allowable as a deduction *under this chapter*...." Because Chapter 1 includes §§ 1–1399, and because § 55 and § 163 are both in the same chapter, the § 163 limitations apply to § 55. Moreover, §§ 55(e)(1) and 55(e)(1)(D) expressly state that an "alternative tax itemized deduction[ ]" for qualified interest equals *the amount allowable as a deduction for the taxable year under ... this chapter.* Thus, the statutory provisions in effect in 1985 themselves impose the § 163 limitations on the computation of alternative minimum tax interest deductions.

### III.

For the foregoing reasons, the Court GRANTS summary judgment in favor of the United States of America. This action is dismissed in its entirety.